812

(No. 81-CC-1996– )

PYRAMID CONSTRUCTION COMPANY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order allowing claim filed August 19, 1982.*

*Motion for reconsideration denied October 22, 1982.*

DOBBINS, FRAKER, TENNANT, JOY & PERLSTEIN, for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This cause of action was brought as a result of problems involving a construction contract between Pyramid Construction Company and the State of Illinois whereby the Claimant undertook the demolition of a two-lane highway bridge on a Champaign County road, together with the construction of a new bridge and restoration of the grades and contours as is customary in these types of contracts. Mr. Coon, president of Pyramid Construction Company, testified that for the actual preparation of said construction bid, he relied on the representation of the State as to the dimensions of said right-of-way because the amount of his bid for hauling and replacement of fill was predicated on being allowed

to store the excavated earth adjacent to the roadway and within the highway right-of-way.

There is no question between the parties that there was a representation that this was an 80-foot right-of-way by the plans, and it turned out to be a 60-foot right-of-way. The State representative from the Department of Transportation attempted at great length to show that even if there had been an 80-foot right-of-way, there would not have been sufficient room for the storage of the fill. This, of course, was disputed by the Claimant. In any event, the Claimant was forced to store the fill on the existing road bed.

When the job was substantially completed, and prior to final payment, the county engineer for Champaign County objected to the fact that when the dirt was removed from the road bed certain gravel or concrete materials sifted down through the fill and that the equipment used produced scratches in the asphalt base on the right-of-way.

The State then, through negotiations with the county, refused to release funds until the Claimant replaced 3,200 square feet of roadway surface immediately to the east of the bridge construction. This was done, and there was no issue as to the quality or standard of work on the entire project.

The Claimant's contention is that because of the erroneous specifications, it should be allowed to recover the additional expense because of the additional repair work. The State's contention is that under the specifications for road and bridge construction the Claimant is obligated to replace said roadway, that the Claimant contracted to do so and admitted negligence on his part by performing the work.

As is usual in most of these types of cases, the applicable law is very easily recited, but each case must stand on its particular facts. The State of Illinois prepared the specifications and accepted the bid of the Claimant. It must reasonably be inferred that the experts hired by the State of Illinois would be knowledgeable in these fields of construction and could readily see by the amount bid by the Claimant for trucking and hauling contemplated that the fill was going to remain upon the job site. It is further noted from the testimony that the State inspectors were on the job on a daily basis and apparently found the methods used by the Claimant to correct the problem (i.e. storing the fill on the roadway) to be perfectly acceptable. Mr. Freeman, the State's resident engineer, stated that the equipment operators who performed these specifications were conscientious, and as far as quality of the work is concerned, he found no problems with the way it was performed.

The Court therefore finds from the facts that both parties found the method of avoiding the problem by placing the fill on the roadway to be acceptable and obviously neither party contemplated the damage that resulted. There apparently would have been no problem with final completion of the job without the intervention of the county engineer of Champaign County. Under these particular facts, we fail to find any negligence on the part of the Claimant concerning the damage to the roadway.

Turning next to the State's contention that Claimant actually contracted to do the additional work, we find no merit to this argument. Claimant found himself in a position where he had a substantial amount of funds tied up by virtue of retainage. These are held by the State and will not be released until, in effect, the contractor does

what the State requires. Claimant did the work under protest, demanded payment, and did this work to receive the payments due under the original contract. We do not find that this resulted in any contract. The issue here is that the State and the Claimant entered into a course of remedial conduct, which was initially caused by the State's erroneous specifications. This then produced unforeseen damage which the State, by virtue of the continued cooperation with local governmental authorities, required the Claimant to expend additional funds to correct.

The Claimant has proved by a preponderance of the evidence that he was misled by the right-of-way specifications, and as a result thereof, he was obligated to do extra work.

Claimant is awarded $6,000.